# McDonald's Admx. v. Louisville Car Wheel and Railway Supply Company.

(Decided Oclober 11, 1912.)

## Appeal from Jefferson Circuit Court
### (Common Pleas Branch, First Division).

1. Instructions—Giving of Peremptory Not Error.—As appellant's evidence failed to establish the negligence, complained of as causing her intestate's death, the giving of the peremptory instruction, directing a verdict for appellee, was not error.

2. Negligence—When Evidence Consistent With Either View.— When the question is one of negligence, and the evidence is equally consistent with either view, the existence or non-existence of negligence, the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it.

BRADLEY & CHILTON and EDWARDS, OGDEN & PEAK for appellant.

BURNETT, BATSON & CARY for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Henry McDonald, an employe in appellee's manufacturing plant, lost his life there by coming in contact with a wire charged with electricity, and this action was brought by the administratrix of his estate to recover of appellee damages for his death; it being alleged in the petition, as amended, that it was caused by appellee's negligence in failing to provide him a reasonably safe place and machinery for the performance of his work, and that of J. L. Ross, an incompetent servant of appellee, in turning on the wire, without notice to him, the current of electricity by which he was killed.

The answer of appellee traversed the averments of the petition as amended, and pleaded contributory negligence on the part of the intestate; and its affirmative matter was traversed by appellant's reply.

On the trial, appellee, both at the conclusion of appellant's evidence and after the introduction of all the evidence, asked for a peremptory instruction directing a verdict in its behalf; but it was refused, to which appellee excepted. Thereupon the case was submitted to the jury, under certain instructions given by the trial

judge, over the objections of both parties, and they returned a verdict in favor of appellant whereby she was awarded damages in the sum of $4,500.

Following the return of the verdict appellee filed a motion and grounds for a new trial, which was granted by the court, upon the ground it had erred in refusing the peremptory instruction asked by appellee. To this ruling appellant excepted.

When the case was called for trial at the succeeding term of the court, the parties, after the jury had been empaneled and sworn entered into an agreement of record, providing that the evidence introduced on the first trial might be considered as offered and heard on the second trial; thereupon the court peremptorily instructed the jury to find for appellee, which was accordingly done. Appellant then filed a motion and grounds for a new trial, which motion was overruled. She complains of that ruling, the judgment entered upon the last verdict, and of the action of the court in granting appellee a new trial at the previous term; hence this appeal.

It appears from the evidence that appellant's intestate had been engaged for about two years and four months as operator of a crane in appellee's plant; that he had for several years theretofore been a motorman in the employ of the Louisville Railway Company and, while his experience derived from these employments may not have made of him an expert electrician, it gave him more knowledge of electricity and the danger attending its use in the operation of machinery, than was possessed by the average laborer employed in appellee's plant, and enabled him to repair and keep in proper condition for its work the traveling crane operated by him. His duties as operator of the crane were somewhat similar to those which had been performed by him as a motorman on the street cars.

The crane was attached to a wheeled traveler propelled by electricity upon an elevated track; the electricity being supplied from wires suspended above the track, connection with which was furnished by a trolley pole extending over the traveler. The crane was used for lifting and carrying from place to place, in appellee's plant, heavy materials used in manufacturing its products and for moving the products as well. The electrical currents for the trolly wires were controlled by a

switch in a corner of the building by which it was turned on and off the wires.

One William Harbold, a one-armed man, was the electrician of appellee's plant. J. L. Ross, known among the men of the plant as "Happy" Ross, was also an employe of appellee; though neither an electrician nor a skilled machinist, Ross was useful about the premises as a utility man. He gave frequent assistance to Harbold when required and also to appellant's intestate and other employes of appellee when requested to do so. It appears from the evidence that when any trouble occurred with the crane as to which intestate required assistance, he called on Harbold if the trouble affected its electricial features, and if the assistance needed was with respect to work that any common laborer could do he called on "Happy" Ross. It does not appear from the evidence that Ross ever undertook to do any electrical work other than to occasionally start the air compressor of the electrical works in the morning by simply turning a switch when commanded, and to "oil up" generally. Nor does it appear from the evidence that he was in any sense a superior of the intestate.

According to the evidence, on the morning of the day the intestate was killed, the crane refused to work, probably, because of the burning out of a fuse or fuses. Harbold was absent that day and intestate undertook to ascertain what interferred with the operation of the crane and to remove the difficulty himself. Shortly thereafter he and Ross were seen standing together near the switch board at a corner of the building about 75 feet from the crane, but before going to the switch board he had been to the engine room and gotten one or more fuses which he took with him to the switch board. After a minute or two spent in doing something at the switch board he again returned to the crane which still refused to perform its work. He then left the crane a second time and went in the direction of the switch board, but it does not appear from the evidence whether he went to the switch board or somewhere else in the building.

At any rate, he returned to the crane in a few minutes, got upon it for some purpose, and came in contact with one of the wires which caused his death.

It is appellant's contention that while the intestate was upon top of the crane "Happy" Ross turned on the

current of electricity which caused his death. This contention, it is insisted, is sustained by the testimony of R. D. Ross, who saw "Happy" Ross standing within three feet of the switch board while the intestate was upon the top of the crane; and by that of George Selgraph that he at that time felt a slight electrical shock through a tool with which he was working, and immediately saw a flash of light and heard intestate groan.

If the testimony of R. D. Ross and Selgraph referred to, embraced all that was said by them, it might be claimed that it gives some support to appellant's theory that the electricity was turned on the wire by "Happy" Ross; but in addition to what has been said of their statements, R. D. Ross testified that after he saw "Happy" Ross standing within three feet of the switch box and intestate on the crane, he left the building and after walking a distance of one hundred feet therefrom returned to the building and upon re-entering it, discovered that "Happy" Ross was not at or near the switch box; that he then saw the intestate still upon the crane and that he was not killed until five minutes after his (R. D. Ross') return to the building.

Selgraph also testified that when he felt the shock through the tool, saw the flash of light and heard the intestate groan, he called for some one to shut off the electricity and then saw "Happy" Ross about forty feet from him going in a direction that would not have taken him either to or from the switch box, or to the crane.

"Happy" Ross testified he was not at the switch box when or before intestate was killed, and that he did not turn on the electric current.

In this conection should be considered the testimony of Ike Garrett which was to the effect, that he saw the intestate shortly before his death leave the crane and go in the direction of the switch box; that he soon returned to the crane and got upon it and took hold of the crank in an effort to start it; that it made a humming noise but did not move. This witness further testified that the intestate, following the humming noise, looked up at the wires but remained on the crane until he was killed. The witness, however, was not looking at him when he came in contact with the wire and did not know what he was then doing.

It is insisted for appellee that the testimony of Garrett shows that the intestate himself turned the electric

current on the wires, or if he did not do so, the humming noise heard by Garrett informed him that the wire was charged with electricity, which information, together with his knowledge of the uninsulated condition of the wires, apprised him of the danger attending any further efforts on his part to make the crane work, without turning off the electric current.

It is also argued by counsel for appellee that as the intestate's left wrist was the only part of his body that came in contact with the wire, he must have lost his balance while standing on the crane and, inadvertently, thrown his wrist against the wire in the attempt to keep himself from falling; that the fact that he did not grasp the wire with his hand, shows that he knew it was charged with electricity, otherwise he would instinctively have supported himself by closing his hand upon it.

This argument, like appellant's contention, that her intestate's death was caused by Ross' negligence, rests upon mere conjecture. The only fact positively shown by the proof is that appellant's intestate was killed by coming in contact with a live electric wire. The evidence furnishes as much ground for saying it resulted from his own negligence, as that it was caused by the negligence of Ross, at any rate, the evidence as a whole is not sufficient to authorize the conclusion that it resulted from the negligence of Ross.

As said in Louisville Gas Co. v. Kaufman & Straus Co., 105 Ky., 131:

"When the question is one of negligence or no negligence, it is well settled law that, where the evidence is equally consistent with either view—the existence or non-existence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it." Hughes v. Railroad Co., 91 Ky., 526; Wintusky's Admr. v. Railroad Co., 14 R., 579; Dana & Co. v. Blackburn, 121 Ky., 706.

As the question is not here raised, we have not considered whether the relation of J. L. Ross to the intestate was that of a fellow servant. Our conclusion is that the peremptory instruction was properly given.

Judgment affirmed.