# Wood v. Cumberland Telephone & Telegraph Co.

(Decided December 6, 1912.)

## Appeal from Muhlenberg Circuit Court.

1. Damages—Injury From Concurring Causes—Rule as to Recovery—Negligent.—It is a well settled rule of law that if an injury is the result of concurring causes, for one of which only the defendant is responsible, he must answer; or where the injury is the combined result of negligence and accident, the negligent party must answer, unless the injury would have happened if he had not been negligent.

2. Damages—Failure to Insulate Telephone Wire—Destruction of Building—Evidence—Lightning Arrester.—In this action by appellant to recover damages for the destruction by fire of his store building and contents, caused, as alleged, by appellee's negligence in failing to properly insulate its telephone wires where they entered the building, which, it was further alleged, allowed an electrical current of unusual force imparted to the wires by lightning outside the building, to pass into same and ignite it. Held: That as the evidence failed to show the wires were struck by lightning, it did not appear that the negligence of appellee in failing to insulate its wires where they entered the building, was the proximate cause of the fire; therefore, the giving of a peremptory instruction by the court, at the conclusion of appellant's evidence, directing a verdict for appellee, was not error.

FLEXNER & GORDON and WILLIS & MEREDITH for appellant.

NEWTON BELCHER, BELCHER & SPARKS and CLARENCE FINN for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

On the trial of this case in the court below a verdict was rendered for appellee in obedience to a peremptory instruction given by the court at the conclusion of the appellant's evidence. So the only question arising on this appeal is whether or not the evidence introduced in behalf of the appellant was sufficient to take the case to the jury. The action was brought by appellant to recover of appellee damages for the burning of his storehouse and goods, situated at Belton, a village in Muhlenberg County; it being alleged in the petition that the destruction of the property was caused by the negligence of appellee in failing to properly insulate its wires connected with and used in operating a desk telephone within the building and in failing to provide the

telephone or wires with a lightning arrester; furthermore, that the striking of the telephone wires by lightning, somewhere in the vicinity of the building, produced and carried into it an electric current of unusual force which started the fire, either by coming in contact with the goods stored therein, or overheating the wires within the building.

The building was in size seventy feet by one hundred feet, constructed of brick with a roof of tin. Its interior was divided into three apartments connected by arched openings in the partition walls, and the building, as a whole, occupied as a general or department store. There was a single room built over the southwest corner of the store building which appellant occupied as a sleeping room, and from this room a stairway led down into the store below. The telephone wires entered the main building at its north or rear end through the upper part of a window to the left of the door, and within the building extended along one of the partition walls, back of pine shelving, connecting with the telephone near a desk in the interior of the building.

The fire occurred about one o'clock in the morning and was first discovered by appellant, who was awakened from sleep by the smoke which entered the bedroom over the store. He made his escape from the building by descending from its roof to that of a coal house adjoining, thence to the ground.

It is manifest from the bill of evidence appearing in the record that the telephone wires were uninsulated where they entered the building and that they were neither there, nor elsewhere, provided with a lightning arrester; indeed, this is admitted by appellee. The evidence shows that porcelain tubes should be used for insulating such wires where the building is entered by them, and that the safety of persons operating telephones requires the use of lightning arresters, for grounding the electric currents, during the prevalence of electrical or thunder storms.

If it could be said that appellant's right to recover damages, as claimed, depended wholly upon whether appellee's failure to insulate its telephone wires and provide a lightning arrester was negligence, the peremptory instruction should not have been given. But as it was incumbent on him to further show that such negligence was the proximate cause of the burning of his storehouse and goods, it remains to be determined

whether the evidence introduced in his behalf conduced to prove that the telephone wires were struck by lightning outside the building, thereby creating upon them an additional electric current of unusual force, which, because of the negligent failure of appellee to properly insulate the wires or provide a lightning arrester, they conducted into the building and caused the fire.

As said in City of Louisville v. Bridwell, 150 Ky., 589, with respect to an accident resulting in an injury to the person of the plaintiff:

"It seems to be well settled in law that if the injury is the result of concurring causes, for one of which only the defendant is responsible, he must answer, or where the injury is the combined result of negligence and accident, the negligent party must answer, unless the injury would have happened if it had not been negligent." 1 Thompson, section 68; City of Louisville v. Hart's Admr., 143 Ky., 171; Whitman-McNamara Tobacco Co. v. Warren, 23 R., 2120; City of Louisville v. Johnson, 24 R., 685; 29 Cyc., 498.

Much of appellant's evidence conduced to prove that as late as 9 o'clock on the night of the fire, the atmosphere was apparently charged with electricity, which manifested itself in frequent flashes of what is known as sheet lightning in various parts of the horizon. The evidence, however, falls short of showing that the electrical disturbances referred to could have imparted to the telephone wires an electric current of sufficient strength to have overheated them within the building or cause them to transmit the current into and ignite the building or its contents; indeed, no witness saw any display of electricity upon or about the wires, and appellant, who was in the store that night and did not retire until after 9 o'clock, gave no testimony that his telephone was affected in any way by the display of electricity on the outside.

It is true that appellant testified that some time during the night and before the fire he was awakened by a "loud clap of thunder" and vivid flash of lightning; and the witness, Latham, whose residence is a half mile distant from Belton, testified that while standing in his door, he heard a "loud clap of thunder" and saw a great flash of lightning apparently in the direction of Belton. He was unwilling to say whether this was twenty-five minutes after twelve or twenty-five minutes before one o'clock, although he at the time looked at

his watch, but was confident that it was one or the other. It is insisted for appellant that the above evidence, together with the fact that the fire was discovered about one o'clock, was sufficient to make it reasonably certain that the telephone wires were struck by lightning, which imparted to them a current of electricity so powerful as to cause them, in the absence of proper insulation, to pass it into the store and ignite it.

We are unable to accept this conclusion. If the telephone pole from which wires run into the building, and which stood within fifty feet of it, had shown any marks of a lightning stroke, or other poles in the vicinity had shown such marks, or anything in the appearance of the wires had indicated such an electrical visitation, it would have given support to appellant's theory as to the origin of the fire; but without such support the theory rests wholly upon conjecture.

According to the testimony of appellant the first discovery of the fire was made by him. When first seen by him the flames were coming out from the cornice and immediately under the eaves of the building in numerous places and the tin roof was rising and falling from the heated air beneath. Moreover, after he got to the door at the front of the building where he could see the entire inside, including the central part where the telephone was kept, he could see no light of any kind.

From these facts it might well be argued that the fire began in the ceiling and worked its way downward to the contents of the store, and that if the lightning, which accompanied the thunder heard by appellant, and, Latham, did any execution at all, it struck the store building instead of the telephone lines, and thereby ignited and destroyed it.

In considering the evidence we have not overlooked the fact, that the top of the window where the telephone wires entered the building, was one of the places, and perhaps the first place, through which the flames were seen by the witness Tipton to proceed, but it should be borne in mind that this window, according to the evidence, was the only one of the building lowered at the top and it had been kept so from the time the time the telephone wires were run into the building. Being the only opening to the burning building, it afforded the only outlet for the escape of the heat and flames, and both would naturally follow the draft it

produced. We do not mean to express the opinion that the fire resulted from the lightning striking the building, but only to say that the evidence furnishes as much proof of its having occurred in that way as that it was caused by the transmission of an electric current into the building over the telephone wires, which had been imparted to them by lightning. Neither theory is supported by any satisfactory evidence, therefore neither is tenable.

So many fires are of mysterious origin, that it may safely be said half of them cannot be accounted for. What may have caused the burning of appellant's store house cannot be reasonably ascertained from the evidence upon which he relies in this case. It is simply another mysterious fire originating from an unknown and unexplained cause; and it will not meet the ends of justice to permit a jury to enter the field of speculation or conjecture in order to arrive at a verdict which is to determine the legal rights of litigants.

Appellee is not required to account for the fire. On the contrary, the burden is upon the appellant to show that it is in some way chargeable to its negligence and this he has failed to do. The case comes clearly within the rule announced in Louisville Gas Co. v. Kaufman & Straus, 105 Ky., 131; Hughes v. R. R. Co., 91 Ky., 526; Wintimsky v. L. & N. R. R. Co., 14 R., 579, and numerous other cases, including the very recent case of McDonald's Admr. v. Louisville Car Wheel & R. S. Co., 149 Ky., 801. In Louisville Gas Co. v. Kaufman & Straus, supra, the rule in question is thus stated:

"When the question is one of negligence or no negligence, it is well settled law that, where the evidence is equally consistent with either view—the existence or nonexistence of negligence—the court should not submit the case to the jury, for the party affirming the negligence has failed to prove it."

Wherefore, the judgment is affirmed.