## Williams, et al. v. Schmidt.

(Decided February 16, 1926.)

## Appeal from Greenup Circuit Court.

1. Appeal and Error—Alleged Error in Instructions Not Considered, in Absence of Exceptions.—Alleged error in instructions of trial court cannot be considered, in absence of exceptions taken to them.

2. Automobiles—Driving Rapidly, Steering Gear Not Under Control, Negligence.—It is negligence to drive a car over an important highway bridge at rapid speed, with steering gear not under control.

3. Automobiles—Passing on Wrong Side of Road in Meeting Vehicle is Negligence.—Meeting and passing another vehicle beyond the center of the roadway and in a line with vehicle sought to be passed is negligence.

4. Automobiles—Negligence in Passing Parked Automobile on Bridge Held for Jury.—In action for injuries when plaintiff was struck by automobile as it was attempting to pass another, which was parked on highway bridge, evidence of negligence of driver of passing car held for jury.

5. Automobiles—Contributory Negligence of Pedestrian Injured by Driver Passing Parked Automobile Held for Jury.—In action for injuries when plaintiff was struck by passing automobile while he was looking around from the rear of an automobile parked on highway bridge, contributory negligence held for jury under evidence.

6. Damages—One Thousand Seven Hundred Ninety-four Dollars Not Excessive for Injuries Including Cut on Forehead Leaving Scar.—One thousand seven hundred ninety-four dollars held not excessive for injury to railroad engineer when struck by automobile, causing loss of time worth $294.00, and severe and painful wounds, which would leave scar upon forehead, but no other permanent injury.

L. D. BRUCE and A. D. COLE for appellants.

S. S. WILLIS for appellee.

OPINION OF THE COURT BY JUDGE McCANDLESS—Affirming.

An automobile owned by Frank Williams, while being driven by his son Walter upon the Ironton bridge, struck and injured A. H. Schmidt. The bridge spans the Ohio river and the injury occurred on the Kentucky side. Schmidt filed suit against both Frank and Walter Williams, alleging negligence in general terms and seeking

to recover for his injuries.   The answer traversed the allegations of the petition and pleaded contributory negligence, which was controverted by reply.   In a jury trial plaintiff recovered $1,794.00 against both defendants. They appeal.

A preliminary motion has been made to strike the bill of exceptions from the record, but in view of the conclusions we have reached on the merits, it is unnecessary to pass upon this question.   While some criticism is made of the instructions given by the trial court, this alleged error is not strongly urged and cannot be considered, for the reason that no exceptions were taken to any of them.   The real grounds of complaint are; (1) that the court erred in overruling defendants' motion for a peremptory instruction which was offered at the close of plaintiff's testimony, and also at the close of all the evidence; (2) that the verdict is excessive.

(1)   Plaintiff testifies that he is an engineer for the C. & O. Railroad; that on the evening of July 13, 1922, he came into Ashland at the end of his run; he and his conductor, Harry Moore, rode to Ironton and started to their homes in Russell, Ky., after dark, walking.   While on the bridge they were overtaken by a friend, Mr. Heberle, in a machine.   The footway is on the side of the bridge and is raised about twelve inches above the roadway.   Mr. Heberle drove his machine close to the footway and invited the two to get in, saying that he would drive them home.   He stepped upon the running board and placed his grip in the car.   There were several in the car and space was made for Mr. Moore on that side and for him on the opposite side of the car.   To reach this he started around the rear of the car and while so doing, he observed the reflection from the headlights of a car approaching from the opposite direction.   The body of a car is not so wide as the fenders and he looked around this to ascertain the space left by the approaching car, and in so doing his head and one leg extended slightly beyond the car and were struck by the passing machine.   He was knocked unconscious and carried to a physician's office, where his wounds were dressed and he was taken home, where he was confined to his bed for twenty-one days and lost thirty-five days in service. Prior to that time his eyesight was good.   Since then one of his eyes has become weakened and he is required to wear glasses, and at the time of the trial, two years later,

continues to suffer from the injury. His wages as engineer was $8.40 a day.

Mr. Heberle corroborates him as to what occurred at the time of the injury; his car was parked almost against the walk, his fender being within two inches of it; this left the remaining highway sufficiently wide to allow 4½ feet clearance between passing cars. Schmidt stepped on the running board, placed his grip in the car and started around the rear to get in on the opposite side. Witness saw a car approaching at the rate of thirty miles an hour; it was "weaving along" and apparently not under control; it passed so near him that he could have placed his hand on the driver's shoulder. It seemed to swerve and he heard it graze the fender of his car. After striking Schmidt the driver did all that he could to stop, but ran two hundred feet before he did so. Witness went at once to Schmidt, who had been knocked behind his car. He was semi-conscious and bleeding profusely. Defendant Williams returned and went with them to the doctor's office. The physician testifies that plaintiff had a lacerated wound upon the forehead, which was four inches long and required stitching. He also had wounds on the left thigh and was suffering from shock, but had no fractures. He visited him eight or ten times at his home; that now he has fully recovered from his wounds. He knew nothing of plaintiff's eyesight, but admits that his injuries could have produced such a result.

Defendant Walter Williams testifies that the bridge is 19 feet three inches in width; that he was driving at about 20 miles per hour; that he saw the car parked at the side of the bridge and that it was a step or step and a half from the walk; that his machine divided the distance between it and the opposite rail, allowing a clearance of about a foot on each side; it was dark and he did not see Schmidt at all but that he evidently came from behind Heberle's car and walked into the side of his machine. He heard something hit and a man "holler" and stopped his car within 27 feet and returned, and went with Schmidt to the doctor's office. On the following morning he discovered some flesh on the top hanger at the back end of his car over the back wheel, also the bow was bent, but the car was uninjured elsewhere and he is certain that he did not hit Heberle's car.

It is certainly negligence for a person to drive a car over an important highway at a rapid rate of speed with the steering gear not under control or for the driver in passing another vehicle to leave his side of the highway and drive past the center of the roadway and in line of the vehicle he is attempting to pass, and it must be conceded that plaintiff introduced proof tending to prove both propositions; nor can it be said that the plaintiff was guilty of contributory negligence *per se* in assuming that the approaching car would not violate the rules of the road, and in investigating to see whether or not he could enter Heberle's car on the side next to the center of the bridge. As to whether he exercised ordinary care in so doing was properly a question for the jury. It follows that the court did not err in overruling the motion for a directed verdict. (2) It is shown by the evidence that the plaintiff lost thirty-five days' time of the value of $294.00. He was not permanently injured but he received severe and painful wounds from which he suffered up to the time of the trial and a scar upon his forehead which may cause him more or less humiliation. While the verdict is liberal we are not prepared to say that it is so excessive as to strike the mind at first blush as being the result of passion and prejudice, therefore we are not authorized to set it aside as being excessive.

Perceiving no error the judgment is affirmed.