# HESTER v. COLISEUM MOTOR CO.
(No. 1587; March 10, 1930; 285 Pac. 781)

346

For the plaintiff in error there was a brief by *Harold I. Bacheller, I. G. McCann* and *R. R. Rose,* all of Casper, and oral argument by *Mr. Rose.*

For the defendant in error there was a brief by *Durham and Bacheller,* of Casper, Wyoming, and *Gillette and Clark,* of Denver, Colorado, and oral argument by Henry M. Clark.

348

RINER, Justice.

One Robert M. Gray was killed in an automobile collision on the Yellowstone Highway September 21, 1928, and an action was instituted in the District Court of Natrona County by his mother, as administratrix of his estate, to recover damages on account of his death under Section 5561, Compiled Statutes of Wyoming 1920. The Coliseum Motor Company, a corporation, was made defendant in the action. At the trial, upon the conclusion of plaintiff's evidence and upon motion of the defendant, the court directed the jury to return a verdict in the latter's favor, and judgment was thereafter accordingly entered upon this verdict that plaintiff take nothing by reason of her action. Plaintiff's motion for a new trial, based principally upon the alleged error of the court below in sustaining defendant's motion for a directed verdict, having been overruled, she has brought the case here for review by proceedings in error, assigning as error, in the usual manner, the overruling of her motion for a new trial. For the sake of convenience the parties will be referred to herein as the "plaintiff" and "defendant" respectively.

Plaintiff's petition, after alleging the institution of the action by her as administratrix of the estate of Robert M. Gray, deceased, and the corporate existence of the defendant, in substance alleges as follows: That on the date mentioned above, about 11:15 o'clock at night, an employee of the defendant was driving its Dodge truck, having a body 6 feet six and one-half inches in width, easterly along the highway about four and one-half miles west of Douglas, Wyoming, and was towing about two feet behind said truck

a Chevrolet car, in such a way that the latter extended about one and one-half feet north into the highway; that the front end of the Chevrolet car was elevated about one and one-half feet above the highway; that defendant's employee negligently drove the Dodge truck to within about four feet of the rear end of a large gravel truck, standing in the highway either without lights or with defective and dim lights—the condition of said lights being known to said employee; that the headlights of the Dodge truck were unprovided with lenses, the reflectors thereof were rusty and dirty, and because of this and the position of the Dodge truck just behind the gravel truck, its headlights could not be seen for more than about five feet in advance of said lights; that defendant negligently failed to place a light on the left side of its truck body and operated the same without any such light, and that the lights from the headlamps of the Chevrolet car, by reason of its elevation above the highway, were thrown up and against the rear of the Dodge truck so that they could not be seen more than two or three feet in front of said lamps.

The pleading then avers that Robert M. Gray, as the guest of one Gidley, was riding in the rear seat of the latter's Hudson motor car, which was being driven in a westerly direction along the north side of the highway aforesaid at a speed not exceeding thirty miles per hour; that Gidley turned his car to the right to avoid collision with said gravel truck, and because of the defendant's negligence in driving the Dodge truck to a position just behind said gravel truck, in operating the Dodge truck with the lights in the aforesaid defective condition, in not exhibiting a light on the left side defining the limits of the body of the truck and in permitting the Chevrolet car to extend out into the highway with headlights obscured and deflected, as aforesaid, Gidley was unable to and did not see either the Dodge truck or the Chevrolet car and drove his Hudson automobile into these cars; and that because of the collision and defendant's negligence, the Hudson car was overturned

and Robert M. Gray was killed—all to the plaintiff's damage in a claimed sum.

The defendant's answer in its first defense in general put in issue the several acts of negligence charged and denied that the width of the Dodge truck was as alleged in plaintiff's petition, that the Chevrolet extended north of that truck into the road, or that the lights on the gravel truck were not burning, or that they were defective. Defendant's pleading denies also that the lamps on the Dodge truck were defective. While admitting that the truck had no lights placed upon the sides of its body, denial is made that their absence caused or contributed to Gray's death. Admission is made that the beams of the Chevrolet lights were thrown upward and against the Dodge truck, but it is denied that their light was not visible no more than two or three feet in advance thereof. Briefly, as a second defense, it was alleged that the lights on both the Dodge truck and the Chevrolet car which was being towed, were of such intensity as to be visible at the usual distance to approaching motorists; it was also alleged that the driver of the Dodge truck saw the lights of an approaching automobile and in order to avoid possible collision, stopped upon the southerly edge of the highway behind a gravel truck which he then discovered standing with its right wheels upon the extreme outer edge of the highway; that the approaching car was driven by Gidley, with Robert M. Gray as a passenger, on the south side of the center line of the highway, and at the speed of approximately forty to fifty miles an hour; that as the Gidley car approached the parked cars it swerved first to the right or north side of the highway and then it swerved abruptly to the south and crashed into the sides of the Dodge truck and the Chevrolet, and at a distance of seventy-five to one hundred feet in the rear of the parked cars, left the highway, was overturned upon Gray and he killed; and that the sole cause of Gray's death was Gidley's negligence and carelessness in driving his car.

A reply was filed on behalf of plaintiff, putting in issue the new matter set forth in defendant's answer.

As already indicated, the controlling question argued and submitted by the parties for decision here was whether the court was correct in directing a verdict for the defendant at the close of plaintiff's case. That question as thus submitted involves necessarily a consideration of the evidence introduced by her.

The facts concerning the accident as developed by plaintiff's witnesses and material to be considered in reaching a proper solution of the submitted question are substantially these:

About eleven o'clock in the evening of September 21, 1928, C. M. Gidley left Douglas, Wyoming, proceeding in a westerly direction towards the city of Casper, driving his Hudson automobile, his wife being seated on the front seat and Robert M. Gray as a guest riding in the back seat. Gidley drove at a speed of about thirty or thirty-five miles per hour and had passed over 4½ or 5 miles of the road between Douglas and Casper when he observed a gravel truck standing on the road. He testifies that immediately prior to the accident his car was travelling at a speed of thirty-five miles per hour and there were no cars right in front of him. His lights illuminated objects over 500 feet ahead. There was a rise in the road about 300 feet from the gravel truck and as he came over the rise he saw the truck for the first time. He saw no lights on it except the reflection—the light from the headlights of his own car shining upon the truck. He then turned out around the gravel truck to his own side of the road—towards the edge of the road. After passing the gravel truck his car struck the body of the Dodge truck, which was towing a Chevrolet automobile, and he struck the side of that also. He did not see the Dodge truck or the Chevrolet or any diffusion of light from these cars as he drew near the gravel truck—the lights on the Dodge truck being very poor and those on the Chevrolet throwing their light up underneath the truck body so that

they would not show to oncoming cars. At the time of the collision the steering wheel was jerked out of his hand and losing control of his car, it went down the road 35 or 40 feet from the Chevrolet car and turned over on its side in the ditch on the south side of the highway. Gray was thrown out and crushed beneath the overturned car, dying a short time thereafter.

The road where the accident occurred was 24 feet wide, having a surface of part gravel and part dirt. The gravel surface was 18 feet in width and on each side of this was 3 feet of dirt road. The gravel truck, at the time of the accident, was standing on the south side of the road, two feet inside the gravel roadway, this vehicle being over six feet in width, including the wheels. Gidley testified that the Dodge truck was behind the gravel truck and extended out beyond the latter some $1\frac{1}{2}$ to 2 feet and over the center of the road, and also that the Chevrolet car extended one-half foot or a foot over to the north side of the road. Another witness for plaintiff who arrived a minute or two after the accident, stated concerning the position of the cars that he would say that the side of the Dodge truck was projecting out past the center of the road and that the tail end of the Chevrolet was out farther than the front end, out beyond the center of the road on the left hand side going towards Douglas.

The body of the Dodge truck had four cross members under it, which were more than six feet in width, but carried no light on its left side the night of the accident. There was also testimony on the part of Gidley that the driver of the Dodge truck, defendant's employee, stated to Gidley after the accident: "The cross beams on the car where you struck is what caused the accident."

As stated in Collins v. Anderson, 37 Wyo. 275, 260 Pac. 1089, 1090, "in considering whether the trial court was justified in taking the case from the jury we must accept as true the evidence in favor of the plaintiff together with such inferences as might reasonably be drawn therefrom, and

then determine whether such evidence and such inferences would support a verdict in the plaintiff's favor if such a one were returned by the jury.''

See also Calkins v. Wyoming Coal Co., 25 Wyo. 409, 171 Pac. 265.

It will be observed that no negligence is, by the defendant's answer, charged against plaintiff's intestate Robert M. Gray. Counsel for both parties are agreed, too, that it is the law that any negligence on the part of Gidley with whom Gray was riding is not, under the facts of this case, imputable to the latter. With that view we concur, it being a thoroughly well settled legal principle in almost all of the states of the Union that the negligence of the driver of an automobile is generally held not imputable to a guest in the conveyance, who neither has nor assumes any control or power of direction over him in the operation of the vehicle. 2 R. C. L. 1207, Sec. 43; Vol. 2, Perm. Suppl. R. C. L. 685 and cases cited; 42 C. J. 1178 and cited cases; Berry's Law of Automobiles (5th Ed.) p. 420-1, Sec. 573 and extended list of cases there given; 2 Blashfield's Cyclopedia of Automobile Law, 1137, Sec. 28. This rule has some exceptions, but the instant case does not present one of them.

So far as it is concerned, the plaintiff must be held entitled to recover if the negligence of the Dodge truck driver, if any there was, proximately caused or contributed to cause the death of plaintiff's intestate, even though the alleged negligence of Gidley, the driver of the Hudson automobile, also contributed to cause that death. In other words, ''where injury results from two separate and distinct acts of negligence by different persons operating and concurring simultaneously and concurrently, both are the proximate cause and recovery may be had against either or both of the responsible persons.'' DeWees v. Kuntz, (Cal. App.) 280 Pac. 552; Dow v. Sunset etc. Co., 162 Cal. 136, 121 Pac. 379; Sullivan v. Krivatsky, 100 Conn. 508, 123 Atl. 847; Lavenstein v. Maile, 146 Va. 789, 132 S. E. 844; Sif v. The M. O'Neal Co., 17 O. App. 216.

In order, therefore, to sustain the directed verdict in this case, it must appear from plaintiff's evidence and the reasonable inferences capable of being fairly deduced therefrom that the alleged negligence of Gidley in driving his car was the sole proximate cause of Gray's death, and this is the contention of the defendant.

Section 4 of Chapter 158, Laws of 1925, provides, concerning the duty of motor vehicles in meeting each other on the highways of this state, as follows:

"Whenever any person, traveling with any vehicle or conveyance on any road or public highway in this state, shall meet another vehicle or conveyance traveling in an opposite direction it shall be the duty of the driver of such vehicle or conveyance to turn promptly to the right of the center of the traveled road and to remain on the right of the center of the traveled road until such vehicle or conveyance has passed."

Under a somewhat similar statute it has been held that where a motor car traveling along a public road has stopped thereon and another car approaches it from the front, both cars, notwithstanding one is stationary, are meeting each other in the sense of the law. Roberts v. Philips, 35 Ga. App. 743, 134 S. E. 837. The cited section of our law is, of course, the embodiment in statutory form of a long continued and universal custom followed in this country for approaching vehicles on the highways to pass each other on the right when meeting.

Section 6 of Chapter 158 aforesaid contains the following provision:

"Every motor truck, the body of which exceeds six feet in width shall exhibit during the hours of darkness, in addition to the above required lights, a white light on the left side of the machine defining the limit of the body of the machine or the overhanging load, if any there be, and beyond the outside thereof, the said light shall be so fixed or carried that the light therefrom may be seen both from the front and rear of said motor truck."

In connection with these statutory rules it must be borne in mind that the violation of a legal duty by a driver on the highway does not necessarily carry with it liability for an injury caused by his car as to incur such liability the violation must have been the proximate cause of the injury concerning which complaint is made. Christensen v. Mc-Cann, (Wyo.) 282 Pac. 1061; Lane v. Mullen, 285 Pa. 161, 131 Atl. 718; Hatch v. Daniels, 96 Vt. 89, 117 Atl. 105; Trudell v. James Cape and Sons Co., 187 Wisc. 276, 202 N. W. 697; 42 C. J. 900. Violation of traffic regulations also, whether they be of the state or municipality, are at least evidence of negligence. In 2 Blashfield's Cyclopedia of Automobile Law, 1158, where many cases are cited, it is stated that, "by the great weight of authority such violation is negligence *per se.*" See also 42 C. J. 899-900, Sec. 605 and cases cited.

The decisions of the courts of last resort in this country are legion dealing with questions arising because of violation by motor vehicles of the law of the road, and because of failure to carry lights as by law required. It may aid at this point, however, to direct attention to some fairly recent cases which, by their concrete facts in some respects similar to those at bar, illustrate under what circumstances a liability is held to flow from such lapses in duty.

In Padgett v. Brangan, 228 Ky. 440, 15 S. W. (2nd.) 277, 279, it appeared that a truck driver had left his truck stationary on the wrong side of the highway, at a place where the driver of a car approaching from the opposite direction along a curve about 4:30 o'clock in the morning in the month of December could not locate the side of the highway where it was standing until within a short distance from it. A collision occurred with only the left sides of the vehicles, as the driver of the car, upon suddenly finding the truck upon the wrong side of the road, endeavored to pass to its left, as he stated that seemed to him, in the emergency created, the most feasible course. It was claimed for the defendant that the plaintiff was guilty of contribu-

tory negligence, because of the speed at which he was driving and in failing to reduce that speed until he was placed in the emergency mentioned. The trial court, upon defendant's motion, gave to the jury a peremptory instruction in his favor. In the course of its opinion reversing the judgment dismissing plaintiff's action, it was said:

"Defendant in this case, according to plaintiff's testimony, which was all that was introduced on the subject, left his truck stationary and on the wrong side of the highway and at a place where, at that time of day, one approaching from the opposite direction could not locate the side of the highway on which it was stationed until within a short distance from it. We therefore conclude that, under the statute as construed in the Bradley opinion, defendant was guilty of negligence so as to render him liable for the consequence of the collision complained of, unless plaintiff was guilty of contributory negligence so as to defeat his right to recover, and which brings to a consideration of ground (b), supra.

"Plaintiff had the right to assume, in the absence of knowledge to the contrary, that, when he observed the headlights of defendant's truck, it was on the right side of the highway, since it was defendant's duty to be on that side, and the presumption would be indulged that he was performing his duty. See 2 R. C. L. 1185, Sec. 20, and the many cases cited in the notes to the text. It embodies a well-settled principle in the law of negligence and has been applied many times by this court. He testified that he did so believe and continued to do so until the lights from his automobile informed him to the contrary, but that he was then so close to defendant's truck as to create an emergency calling for immediate action, and that he chose the course taken by him for the reasons hereinbefore stated.

"Both negligence and contributory negligence are usually questions for the jury, unless the testimony, uncontradicted by circumstances or conditions, be such that but one conclusion by honest men may fairly be drawn therefrom, in which case it becomes a question of law for the court. The governing rule as sometimes stated is that a peremptory instruction is not authorized, unless, after admitting the testimony offered by plaintiff (or by defendant when the question of contributory negligence is involved), and every reasonable inference to be deduced

from the facts proven to be true, and that reasonable minds could arrive at but one conclusion therefrom, then it is the duty of the court to give the peremptory instruction; but, if not so, then it is the duty of the court to submit the issue to the jury under proper instructions.''

The same court, in Williams v. Schmidt, 213 Ky. 122, 280 S. W. 494, 495, speaking of the refusal of the trial judge to sustain defendant's motion for a directed verdict, where a collision had taken place between a person about to board an automobile standing on its own side of the highway and another car driven on the wrong side of the road, had previously remarked:

''It is certainly negligence for a person to drive a car over an important highway bridge at a rapid rate of speed with the steering gear not under control, or for the driver in passing another vehicle to leave his side of the highway and drive past the center of the roadway and in line of the vehicle he is attempting to pass, and it must be conceded that plaintiff introduced proof tending to prove both propositions; nor can it be said that the plaintiff was guilty of contributory negligence *per se* in assuming that the approaching car would not violate the rules of the road, and in investigating to see whether or not he could enter Heberle's car on the side next to the center of the bridge. As to whether he exercised ordinary care in so doing was properly a question for the jury. It follows that the court did not err in overruling the motion for a directed verdict.''

The case of Trudell v. James Cape & Sons Co., supra, was another action for damages resulting from an automobile collision. The jury rendered a special verdict, favorable to plaintiffs, but the court changed the answers in this verdict and entered judgment in favor of the defendant. The facts were briefly these: Early in the morning Trudell, in a Buick car, was towing two cars in its rear, on the road from Chicago to Milwaukee. The first towed car was to the rear of the Buick about eight feet and the second towed car about the same distance behind the first. The three cars were going north and were on the righthand side of the

road which, at the place where the accident happened, was composed of about eighteen feet of cement highway with gravelled surface on either side of eight or nine feet. The cars were travelling with the left wheels on the cement and the right wheels on the gravelled portion of the road. The Buick had its headlights on, the second towed car had a tail light and a spot light near the radiator, and all were proceeding from twelve to fifteen miles per hour. The defendant was going south on the same highway in a Ford coupe. He passed the Buick safely but collided with both the towed cars, resulting in turning his car completely around and tipping it over on the easterly side of the highway. The roadway was marked with a black line in the center and plaintiff's cars were on the right side of the black line. The accident happened by defendant's crossing over from his right side to the wrong side and striking plaintiff's cars. The evidence was in large measure undisputed as to how the collision occurred. Defendant testified that he did not know how the accident happened; that he saw the Buick headlights but did not see the towed cars. In reversing the judgment in defendant's favor and commenting on the facts thus shown, the reviewing court said:

"On this testimony, we are at a loss to see how the court was justified in changing the answers of the jury. It seems plain that all the questions involved were questions of fact for the jury to pass upon. Aside from the time of day, there was no substantial dispute as to the facts. Clearly, under the testimony the defendant ran across the center of the road without any excuse and bumped into the plaintiff's cars. Without dispute there was a spotlight on the Briscoe car which could be seen by the defendant, and there is no dispute but what it was light enough for persons to see 150 feet to 200 feet ahead."

The opinion in Wurl v. Watson, 67 Cal. App. 625, 228 Pac. 43, 44, a case in its facts somewhat approaching the one at bar, affirmed a judgment for the plaintiff where it was urged that his negligence in driving faster under the

circumstances than the statute permitted prevented a recovery. The following excerpt very well sets forth both the facts of the case and the law, as applied to them by the appellate court:

"This is an action for damages arising out of a collision which occurred between an automobile driven by plaintiff and a motor truck being operated by defendants. The collision occurred on a long curve in a highway at about 11 o'clock at night. The findings show that just prior to the happening of the accident plaintiff was driving his automobile easterly over a highway with which he was very familiar at a rate of 25 miles per hour; that defendants' truck with a trailer attached thereto was being driven westwardly at from 8 to 12 miles per hour, with the left wheels of the truck about 1 foot south of the center of the highway, and with no lights either on the truck or on the trailer; that the lights were burning on plaintiff's automobile both immediately prior to and at the time the accident occurred. The evidence showed that on the northerly side of the highway an embankment cut off the view so that neither of the parties saw the other as each of them was rounding the curve until they were separated by a distance of approximately 50 feet, although in the daytime from the point of the accident the highway is visible in a westerly direction for a distance of about 100 to 120 yards. Judgment went for plaintiff, and defendants appeal.

"While it is admitted by appellants that the findings show negligence on the part of defendants, it is contended, first, that as a matter of law such negligence was not the proximate cause of the accident; and, secondly, that the evidence established the contributory negligence of the plaintiff, and hence that the judgment should be reversed.

"Proximate cause has been variously defined, but the definition thereof which appears to meet with general approval is that it is that cause which in natural and continuous sequence, unbroken by any efficient intervening cause, produces the injury, and without which the injury would not have occurred. The actual contact of the two machines was only as to the left front wheel of the automobile driven by plaintiff, passing very closely to the inside of the left front wheel of the truck, and then colliding with the front of the truck, which of necessity resulted in the left front wheel of the truck pursuing a similar course,

with the same result with reference to the automobile—from which it follows, without consideration of the fact that the truck was being driven without lights, that, had the truck been 'on its own side of the road,' the collision would not have occurred. The position of the truck as it was driven over the highway was at least one of the direct causes which continued unbroken by any other efficient intervening cause up to and including the very instant that the accident occurred, and without which cause there would have been no collision between the two motor vehicles.

"Plaintiff was driving his car where he had a legal right to drive it. The only question with reference to his operation of his automobile arises from the manner in which the automobile was driven around the curve."

In Tower v. Camp, 103 Conn. 41, 130 Atl. 86, a case perhaps more closely resembling that before us even than Wurl v. Watson, supra, the plaintiffs also recovered damages for personal injuries, and the facts in outline were as follows: The plaintiffs were guests in an auto owned and operated by one Goodrich and were injured in a collision of Goodrich's car with a truck, which was attached to the rear of and towed by a car driven by Camp. Neither plaintiff had knowledge of the situation and no action on their part contributed to the accident. The case was tried to the court and findings of fact were made. From these it appeared that the Camp car had been stripped of its tonneau and equipped with a crane, as a wreck car, and on the date of the collision and at about 11:30 o'clock at night was engaged in towing a heavy truck whose steering gear had been damaged. As the truck was heavier than the towing car, one front wheel rested on the ground, while the other was raised above it. The two rear wheels of the truck bore the weight of the rear end. Defendants had headlights and a rear red light on the wrecker car, and three red lights or lanterns on the left side of the truck—one at the front end, one about half way back, and one on the rear end. Defendants were proceeding at about eight miles per hour.

Goodrich, who was driving his Star touring car in an opposite direction, with a speed of from 20 to 30 miles per hour, saw defendants' headlights and a red light above them a considerable distance away. As the cars drew near each other, the headlights of defendants' car so blinded Goodrich that he could not see the road ahead of him. He did not slow down. His car safely passed defendants' wrecker car, though just missing it, but the left front end of his auto collided with the rear left wheel of the truck. The collision took place substantially in the center of the road. The defendants' cars at that time were headed diagonally to the right across the highway, with the rear end of the truck in tow projecting over the center line of the highway, and the Goodrich car passing by defendants' wrecker struck the projecting end of defendants' truck in substantially the center of the road. The court found that each driver was negligent in failing to yield the other his half of the road—that Goodrich was further negligent in proceeding without slowing up when blinded by defendants' headlights, and that the negligence of both drivers contributed materially and essentially to cause plaintiffs' injuries. Reviewing and affirming a judgment in plaintiffs' favor, the appellate court used the following language:

"The defendants claim that the facts found do not sustain any allegation of negligence contained in the complaint. One of these allegations, contained in paragraph 7 of the complaint, is that defendants failed to keep to the right far enough to avoid hitting the Goodrich car, a sufficient allegation to claim violation of the law of the road as contained in Pub. Acts 1923, c. 246, Sec. 1. In support of this allegation, the court finds that the collision took place substantially in the center of the road, that at this time defendants' cars were headed diagonally across the highway with the rear end of the towed truck projecting over the center line of the highway. This, in connection with the setting of the scene as described in other paragraphs of the finding, warrants the conclusion of the trial court that defendants' operator was negligent in failing to yield to the Goodrich car its half of the road. The court finds the Goodrich car

guilty of the same sort of negligence; that is that the negligent acts of the operators concurred in producing the disaster. Defendants contend that they should have been apprised by the complaint that the plaintiffs' cause of action was founded on the concurring negligence of both drivers. Each plaintiff is suing these defendants, as each had the right to do, although the negligence of a third party might have contributed to the injury. Each tortfeaser can be sued separately (Shea v. Hemming, 97 Conn. 149, 155, 115 A. 686; Sullivan v. Krivitsky, 100 Conn. 508, 123 A. 847), and since the action may be so brought, no allegations are required in the complaint except such as shall properly set forth the liability of the defendant sued.  *  *  *

"Defendants' operator had turned so that only the end of the truck was over the middle line of the road, and the whole truck was headed diagonally across the road. Defendants' operator had turned, but he had not begun his turn soon enough; his act was not seasonable. Therein lay his negligence. Due care is care proportioned to any given situation, its surrounding peculiarities and hazards. It may and often does require extraordinary care. Defendants' combination of vehicles was singular and unusual. It did not present the usual features of a car hitched behind another car by a rope or chain, with a man at the steering wheel of the towed vehicle, exercising control apart from the towing car, but while its connection with the forward car was somewhat rigid, still, it appears from the method of fastening the cars together as detailed in the finding, there was necessarily some degree of play, and the combined cars were not continuously rigid. Such a combination, moving at night, developed a unique situation, and certainly demanded a high degree of diligence to constitute due care. But the defendants urge that if Goodrich had been a little more careful in his observance of the rule of the road, he would have cleared the truck. This is true; the court has so found, but this does not avail the defendants as against these plaintiffs, whom the court has found in no way contributed to their injuries."

See also Ellis v. Colleta, 1 La. App. 369; Jameson v. Standard Oil Co., 2 La. App. 419; Cooper v. Steptoe, 5 La. App. 462; Wilson v. Bittner, 129 Or. 122, 276 Pac. 268; and the comparatively recent case of Boyle v. Leech, 298 Pa. 188, 148 Atl. 70—all dealing with liability incurred by

vehicles travelling or standing on the wrong side of the road. We also cite at this point another recent case, Hickerson v. Jossey, 282 Pac. (Or.) 768, involving a statute quite closely resembling the Wyoming law requiring a light on the left side of vehicles exceeding a prescribed width.

In the case of Lemos v. Madden, 28 Wyo. 1, 200 Pac. 791, 796, this court remarked that:

"If an injury might reasonably be anticipated from the original negligent act or omission, notwithstanding the intervention of an independent agency, the act of such independent agency will not constitute a defense, for it will not be regarded as cutting off the line of causation, and the party guilty of the original act or omission will be held responsible. (Claypool v. Wigmore, supra; Seale v. Ry. Co., 65 Tex. 274, 57 Am. Rep. 602; Ry. Co. v. Bigham, supra.)"

With the legal principles and authorities cited above in mind, under the facts of the case as they stood upon the conclusion of plaintiff's evidence, we are led to the view that defendant's motion for a directed verdict should have been denied. As already indicated, the proof at the time the motion was made was, that defendant's truck and the towed Chevrolet car were off their proper side of the highway and extended over the center thereof into that portion which Gidley had a right to presume was clear; that said truck was more than 6 feet in width and did not carry a light on its left side as required by the state law; that Gidley did not see either the defendant's truck or the Chevrolet car or any diffusion of light therefrom before he struck them, because of defective illumination and obstructions in front of it; and finally, that Gidley, upon meeting the gravel truck, turned to his own side of the road, where he had a right to be. Upon these facts we think the jury might fairly have inferred that the defendant might have reasonably anticipated that the accident as it occurred would follow from its conduct in having its vehicles in the

night-time on the wrong side of the highway and without the statutory side light, and that, without this negligence the death of Gray would not have been caused. In our judgment, a conclusion might properly be reached at the termination of plaintiff's case without more evidence forthcoming, that defendant's negligence in the particulars mentioned was, if not the sole proximate cause of the accident, at least a proximate concurring cause thereof.

It was said at the argument that the negligence of permitting the truck to extend into the north side of the highway is not charged. That is true. But it is pleaded that the Chevrolet car was on the wrong side of the road and the proof is that that car was struck last by Gidley's auto before it landed in the ditch and overturned.

Somewhat also has been said concerning the right of plaintiff to maintain this action, without pleading or proving who were the heirs at law and their pecuniary loss, but both from what was said at the argument and from the language embodied in the brief of counsel for defendant, we understand that ground of the motion to direct a verdict to be waived. We shall, accordingly, not discuss the point.

The judgment of the District Court of Natrona County is reversed, with instructions to grant a new trial.

*Reversed.*

BLUME, C. J., and KIMBALL, J., concur.