## Louisville Taxicab & Transfer Company v. Reno.

(Decided February 10, 1931.)

ROBERT L. PAGE for appellant.

JOSEPH SOLINGER and W. P. LINCOLN for appellee.

454

OPINION OF THE COURT BY JUDGE RICHARDSON—
Affirming.

This is an action for personal injury. About the hour of 2:40 p. m. on the 9th of April, 1929, appellee was within the safety zone designated for pedestrians, on the south side of Walnut street in the city of Louisville, preparing to board a street car going east on Walnut street, when one of appellant's two and one-half ton trucks was struck by a street car and injured her. She was preparing to take passage on the street car, and was approaching it for that purpose. She describes her injury, and alleges that it caused her great mental and physical suffering, and permanently impaired her power to earn money. She fixes the amount of her doctor's bills, the value of her lost time, her mental and physcial pain and her permanent impairment to earn money at the sum of $21,400. The basis of her action is negligence of the chauffeur in charge of appellant's truck.

The appellant in its answer traversed the allegations of the petition. In the second paragraph, it pleads contributory negligence. In the third paragraph, it relies upon a settlement by the Louisville Railway Company, and the appellee, and alleges that "she released to the Louisville Railway Company all claims she had on account of said accident," and pleads the settlement and release as a bar to her right of recovery. By reply, she traverses the third paragraph of the answer, and alleges that "the settlement was made only in part satisfaction of her claims, and that it was made without prejudice to her rights against the appellant."

On trial by a jury, a verdict was rendered in her favor for the sum of $7,000. Judgment accordingly was entered, from which appellant appeals.

For reversal it insists: (1) Appellant was entitled to a directed verdict; (2) the court erred in giving instruction No. 1; (3) the court erred in failing to instruct the jury as requested by appellant; (4) the verdict is excessive; (5) the court erred in not crediting the judgment in favor of appellee by the sum she was paid by the railway company.

A correct and proper consideration of the grounds relied upon require a resume of the evidence. It is shown that about 2:30 p. m. on the 9th day of April, 1929, she was standing at the corner of Fourth and Walnut streets

at the side of the Seelbach Hotel, waiting for an east-bound Walnut street car. This was the usual stopping place for this car. She stepped down off the curbing to go to and board the street car, when she was struck by something; she recalled being hit; that she remembered no other facts pertaining to the accident, except that she was picked up and carried into Walgreen's drug store; that she was in the safety zone at the usual place for people to board the car; that she was hit on her left lower limb.

It is shown that the truck of appellant was parked on Walnut street, within the safety zone, about sixty feet or more west of the line of Fourth street. Some of the witnesses say that it was parked at an angle, and others that it was parallel with the curbing. The chauffeur, after parking the truck, got out and went into the baggage room of the hotel, about the time the street car was approaching from the west and from the rear of the truck. When the street car struck it, it shoved or rolled it forward, striking and knocking down the appellee and other women. It was caught by bystanders and rolled back and off of appellee. The witnesses who express their opinions of the distance the truck was so pushed or rolled before it was caught by the bystanders vary.

The truck left the Kentucky Hotel, going east on Walnut street to the Seelbach. The street car was behind it. The chauffeur operating the truck says:

"I was going to the Seelbach; I looked back and I seen the car coming with such force, and I noticed he was coming too fast to stop to keep from hitting me and I turned off my motor and pulled my emergency brake back and was standing in the Seelbach door and the street car struck the hind end of the truck and knocked it up on some ladies." The truck, when it was hit, was "dead still." "The emergency brake was not much force, but still it held the truck. It did not lock the wheels." "I held up my hand and looked back to see if anything was coming. There ain't no safety zone at Fourth and Walnut. I pulled up in front of another truck standing there, truck No. 174. It was standing back about a foot from the safety zone. I pulled up in front of him, intending to stop, back up and get my load. There was not

anything but people standing there waiting for the car to come.''

The motorman on the street car says:

.''I was coming up Walnut street and I got I guess in about 100 feet of Fourth street and I saw one of the Brown Taxi baggage trucks sitting, it looked like it was pretty close to the rail, that it would be pretty hard for the—it would be hard to tell whether the car would pass or not. In approaching it closer when I got up to it I slowed down until I guess I was not going over three miles an hour at the fastest and the front end of the car passed it until it passed the front door, which was about four feet from the front end of the car, the iron strap hit the left rear corner of the frame of the truck and pushed it forward about four or five feet.''

The distance from the alley passing the Britling restaurant to the center of Walnut street is thirty-eight feet. The street is sixty feet wide. The sidewalk on the south side of the street is eleven and one-half feet wide. The gauge of the track is five feet, and the distance between them is four feet and six inches, leaving the distance between the curbing and the first rail ten feet and two inches. The shoulder of the street on that side has a fall from the rail to the gutter of eight inches. From the track toward the curb and the catch-basin, on a grade there is a fall of six inches. From the property line on Fourth street to the east side of the door of the baggage room is ninety-three feet. The street car which collided with the truck is thirty-nine and one-half feet long, not including the fenders. The front vestibule of the car is four feet, six inches long, lengthwise of the car. The door almost joins the main body of the car, and it is only eighteen inches wide. It is at the rear of the vestibule. The front of the street car is narrower than the body to the car. It tapers from the front edge of the door. After the accident, marks were found on the street car, four feet and two inches above the top of the rail. The first indentation on the car was right at the beginning of the wider part of the body where there was about an inch and a half iron strap that runs up toward the corner, and for a distance of three feet there were scratch marks on the panels on the body of the car. The truck was twenty

feet and six inches long, and the body of the rear platform was four feet high, which when on the grade would make the rear of the truck, a little higher than the uniform height when level, which may account for the marks being four feet, six inches up on the side of the car. The width of the truck is not shown by the evidence.

The appellant, at the conclusion of appellee's evidence as well as at the conclusion of its evidence, entered its motion for a peremptory instruction. The court overruled the motion and refused to give it to the jury. It now complains of this ruling of the court.

The appellant's truck, the street car, and the appellee had the right to use the street. The mere parking of the truck wilthin the safety zone for the purpose of being loaded was not per se negligence.

The space from the pavement to the first street car track was ten feet and two inches. Another of appellant's trucks was parked within this space immediately behind the one which was pushed or rolled forward by the street car and injured the appellee.

The motorman in charge of the street car saw the truck, but miscalculated the distance between the rear corner of the truck and the necessary space for the street car to pass without coming in contact with the truck. His miscalculation of the distance and the striking of the rear of the truck with the side of the street car was, on his part, negligence as a matter of law. Shaver v. Smith, 179 Ky. 26, 200 S. W. 8, L. R. A. 1918C, 803.

It was his duty to observe the presence of the truck, and, on seeing it so near the track, to exercise ordinary care to avoid coming in contact with it and, if need be, bring his car to a full stop. Ware v. Saufley, 194 Ky. 53, 237 S. W. 1060, 24 A. L. R. 500.

It was the duty of the chauffeur in charge of appellant's truck to exercise ordinary care, not only while the truck was in motion, but when parking it, so that it would be clear of the street car when it was passing the truck. It was a question for the jury whether the chauffeur in charge of its truck exercised ordinary care in doing so. City of Louisville v. Hart's Adm'r, 143 Ky. 171, 136 S. W. 212, 35 L. R. A. (N. S.) 207; Lexington Ice Co. v. Williams' Adm'r, 236 Ky. 318, 33 S. W. (2d) 14.

458

The truck and the street car were two agencies acting entirely independent of each other, and jointly and concurrently were the cause of the injury. It would not have happened except for the concurrence at approximately the same time and place of the two negligent acts. Two causes, combined to produce an injury to a pedestrian in a street, may in their nature be the proximate cause, the one being negligent, and the negligence of the other contributing to the cause of the injury.

Mr. Cooley on Torts, page 78, says:

"If the damage has resulted from the concurrent wrongful acts or negligence of two persons, each of these actions may be relied on as a wrongful action and the parties held responsible therefor jointly or severally for the injury."

The chauffeur in charge of appellant's truck says he saw the street car approaching and the presence of the women in front of his truck where he had parked it; that he saw the street car would run into the truck; to save himself he stopped the truck, applied the emergency brake, left the truck, crossed the sidewalk, and walked to a door opening into a department of the Seelbach Hotel. It is insisted by appellant that he was placed in danger, and in the emergency, to save himself, he was entitled to do as he did, and that by reason thereof the appellant should not be held liable for his negligence, if any, he was guilty of. A person may not himself be guilty of negligence and thereby create an emergency, and then be permitted to say that after the emergency arose he did all he reasonably could with the means at his command to avoid the injury and thus escape the consequence of his own negligence. Knapp v. Gibbs, 211 Ky. 278, 277 S. W. 259, and authorities cited.

It was a question for the jury to determine whether the chauffeur in charge of appellant's truck and the motorman in charge of the street car both failed to exercise ordinary care, and that their joint and concurrent negligence, if any, was the proximate cause of appellee's injury. City of Louisville v. Hart, supra; City of Louisville v. Bridwell, 150 Ky. 589, 150 S. W. 672; Wood v. Cumberland Tel. & Telg, Co., 151 Ky. 79, 151 S. W. 29.

It is urged as another ground for reversal that instruction No. 1 is erroneous. It is insisted that this instruction told the jury that it was the duty of the truck driver not to stop or leave the truck standing upon the main traveled portion of Walnut street, so as to obstruct traffic thereon; that this instruction is erroneous, even though traffic was obstructed by the parking of the truck. It is true "the streets of our cities are constructed for the use of commercial as well as private and pleasure cars," but it is equally true that such cars when using the streets of the city must be operated thereon with ordinary care, with due regard for the safety and convenience of pedestrians and other vehicles and traffic thereon. The instruction complained of is not susceptible to the criticism made against it by counsel of appellant. If the first clause of the instruction, namely: "It was the duty of the chauffeur in charge of the motor truck of defendant, the Louisville Taxicab & Transfer Company, on the occasion referred to in the evidence, not to stop or leave his truck standing upon the main traveled portion of Walnut street, so as to obstruct the traffic thereon," were not followed by the clause, "and generally to exercise ordinary care in all such matters so as to avoid injury to persons using the streets," there would be some basis for the claim urged against it. But, taking the instructions as a whole, the court committed no error in giving it to the jury.

Next, it is complained that the court erred in failing to instruct the jury as requested by appellant. Instruction No. 1 offered by it required the jury to believe from the evidence that the appellee was injured solely by reason of the negligence of the motorman of the street car. The court correctly refused to give this instruction, for, if the appellee's injury were the proximate result of the joint and concurrent negligence of the appellant's chauffeur and the street car motorman, it was improper to confine her right of recovery solely to the negligence of the motorman.

Instruction No. 2 was correctly refused by the court for the same reason. Instruction No. 3, offered by it, conveys the idea that the chauffeur of appellant was suddenly placed in a position of danger by the street car and he had a right to choose whatever appeared to him, under the circumstances, the safest way to avoid this

sudden peril. This instruction fails to recognize the evidence tending to show that the negligence of the chauffeur placed him in that peril, and that the peril was of his own making by reason of his failure to exercise ordinary care when parking the truck. Knapp v. Gibbs, supra.

The appellant urges that the verdict is excessive. Bearing on this question, the evidence establishes that appellant's truck ran against the appellee, knocking her down, injuring her left limb above the knee, and just below the knee, and wrenched the kneejoint. Nine days after the injury a plaster cast was applied to the limb in order to rest it. This case remained on the knee until May 16th, something like four weeks, when it was removed. The limb showed that something had passed over it or struck it violently on the outside, bending the knee inward, wrenching the structure or capsule of the kneejoint. At the end of four weeks the swelling of the kneejoint had somewhat subsided, but she could not bear her weight upon the joint at that time. She began showing some nerve injury to the nerve passing on the outer side of the joint in the region that controlled the muscles of the foot. It developed into "drop foot." In lifting her foot or left limb the toe would drop, and any effort to step or lift her foot required a dragging of the foot. In another four or five weeks, or about July 1st, there was a stiffening of the knee joint due to the dislodgment of one of the outer important cartilages in the joint structure itself. In addition to the dislodgment, there was an injury to the soft structure of the capsule and to the nerve on the outside of the joint. About July 12th she was removed to the Baptist Hospital, and an operation was performed. After this operation, a brace was applied for another month. By the middle of August, she was able to walk with the brace, it being so made as to protect the kneejoint from strain, and at the same time overcome the "foot drop." With the aid of this brace she has been able to walk, but when it is removed she still drags her foot. The operative part of her knee has entirely recovered. At the time of the operation, the cartilage of the knee was found to be broken in two. The joint capsule itself was tense with bloody fluid which had existed in the joint since the time of the injury. She was slowly recovering at the time of the trial, but the foot

drop still exists. Her physician says he fears there is a permanent injury to the nerve.

The appellee was a practical nurse and earning from $20 to $25 a week. She received her injury April 9, 1929. The trial was had in March, 1930. She suffered intensely from her injuries, and had not recovered at the time of the trial. It was peculiarly the province of the jury to fix the amount of her recovery, and we are not prepared to say that it is so excessive as to strike the mind at first blush as being the result of passion and prejudice. Therefore, we are not authorized to set it aside as being excessive. Williams v. Schmidt, 213 Ky. 122, 280 S. W. 494; Standard Oil Co. v. Titus, 187 Ky. 560, 219 S. W. 1077.

The street railway company settled with appellee before the institution of this action and paid her $3,500, which, when added to the $7,000, the amount fixed by the jury in this case, aggregates $10,500 compensation to her for her injury. After the verdict of the jury was returned, appellant entered a motion to credit the verdict by the amount paid appellee by the railway company. The court instructed the jury that, if it found for appellee a greater amount than $3,500, the amount shown to have been paid her by the Louisville Railway Company, then, deduct from its finding the $3,500, and return a verdict for the difference. If it found for appellee less than $3,500, then they should find for the defendant. The court by this instruction directed the jury first to find. the amount of damage it believed from the evidence she had sustained by reason of her injury and deduct therefrom the $3,500, and to fix in their verdict the difference between the total damage it might find for plaintiff and the $3,500. It is presumed that the jury followed the instructions of the court and returned its verdict accordingly. The appellant was not entitled to have the $3,500 deducted from the $7,000 fixed by the jury. The court did not err in overruling this motion.

On the whole case it appears that appellant has had a fair trial at the hands of the jury under proper instructions.

Wherefore, perceiving no error, the judgment is affirmed.